### STATE v. CLYDE EARLY.

(Filed 29 November, 1950.)

1. **Homicide § 25—**

   The State's evidence tending to show that defendant intentionally shot deceased, inflicting injury causing his death, while attempting to hold him for officers of the law because he had stolen defendant's shirt, even though defendant did not intend to inflict fatal injury, *is held* sufficient to overrule nonsuit in a homicide prosecution.

2. **Homicide § 8a—**

   Culpable negligence in the law of crimes is more than actionable negligence in the law of torts, and is such recklessness or carelessness proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety or rights of others.

3. **Same—**

   Upon defendant's plea of an accidental killing, an instruction to the effect that defendant would be guilty if the shooting resulted from negligence must be held for prejudicial error in making the defense unavailing if defendant were guilty of mere negligence rather than culpable negligence.

JOHNSON, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Phillips, J.,* at 10 July, 1950, Extra Criminal Term of MECKLENBURG.

Criminal prosecution upon bill of indictment charging defendant with the murder of one Roy McLain.

The solicitor for the State announced at the beginning of the trial that the State would not seek a verdict of murder in the first degree, but a verdict of murder in the second degree, or manslaughter as the facts may warrant.

Defendant entered a plea of not guilty.

Upon the trial in Superior Court the State offered evidence tending to show that on the afternoon of 28 February, 1950, on Seventh Street in the city of Charlotte, North Carolina, about 100 feet from the home of defendant, Roy McLain received two bullet wounds from a pistol in the hands of defendant,—one through his fingers, and the other in the small of his back; that he died about 8 March, 1950; that his death, in the opinion of medical experts, was the result of a blood clot lodging in the large blood vessel which supplied blood to his lungs; and that the blood clot was formed as a result of trauma of the blood vessels caused either by the bullet wound in his back or by the operation performed in connection with the said wound.

The State also offered in evidence declaration of Roy McLain made in the hospital at time he had expressed belief that he was going to die, as to how the shooting occurred. His brother, testifying, quotes him as saying: "I was coming down the sidewalk and my shoes got muddied up, and I saw an old shirt hanging over a garbage can . . . on a line, and I reached up and got it to brush my shoes off. I heard a man running behind me; I turned around and he had a pistol in his hand. He said, 'Old man, you got my shirt.' 'I didn't mean no harm,' and handed it back to him. When I went to hand it back to him, he shot me through the fingers. I asked him not to shoot again, and I ran to get away from him, and he ran after me and shot me in the back."

Another witness, Mr. Dixon, who resided nearby, and ran to the scene of the shooting, testified that defendant said he shot him because he stole his shirt, that he tried to shoot him in the leg and that he didn't mean to hit him in the body.

This witness, on cross-examination, testified that defendant said he watched him (the man) for quite a while and that he went out and shot at him one time; that he also said the man knocked him down and the gun went off, the first shot; that the man hit him and knocked him on the ground, and that the gun went off; that when he fell the gun went off the second time, and that it was the second time that the bullet went into the man's back; and that he said he did not intend to shoot him.

On the other hand, defendant, as a witness for himself, gave this narrative of the occurrence: That as he was in his kitchen shaving, he looked out of the window and saw a man on the sidewalk,—slowly walk-

ing up and down; that he finished shaving, and looking again, saw this man on a rock wall bordering his lot, reaching over his fence to the clothes lines; that as he watched, the man took his shirt off the line; that he said to his wife, "This man is getting my shirt. Call the police—I'll catch him and hold him till they get here"; that he went through the bedroom, picking up his pistol off the chest of drawers, and went out the front door on Pine Street, and around the corner and down Seventh Street, and caught up with this man approximately 100 feet from the corner of his lot; that he stopped the man and told him he had seen him take his shirt, and he would have to stay with him until the police came; that his wife was calling the police; that when he told the man the police were coming, he stuck his left hand in the waist band of his pants, where he, the defendant, noticed a bulge, and was looking to see if the man pulled anything out; that then the man hit him with his right hand, on the left cheek bone,—knocking him down; that the man started on him, striking at him,—down with his back against the building; that he pulled the gun out of his pocket and shot right up, between them, to scare him; that the man turned and ran, and he, the defendant, made a lunge and one step, and on the second step he stumbled over the curbing and fell into the street, directly behind this man, when the gun went off; that he was trying to catch himself and did not see the man fall; but that when he jumped up, he saw the man lying in the street approximately five steps away; that he ran and picked him up with one arm (the other being hurt in the fall), and carried him across the sidewalk, and asked him where he was shot; and started "undoing" his clothes when Mr. Dixon came over and asked what happened; that he told him that he had fallen and accidentally shot the man; that he, the defendant, had no intention whatever of firing the gun when it fired the second time; that the gun was a "lemon-squeezer" type of revolver, and in the commotion of falling, he accidentally squeezed the handle or pulled the trigger, and it went off; that when he unfastened the man's clothes he found out the bulge in his waist band was a rupture truss.

And, on cross-examination, defendant stated that the shirt was worth about $3.00; that he did not tell Mr. Dixon that he shot the man because he took his shirt; that he shot between them, to keep him off; and that the place he shot the second time was two steps from the place where he shot the first time.

Verdict: Guilty of involuntary manslaughter.

Judgment: Confinement in the State Prison for a term of not less than eighteen (18) and not more than thirty-six (36) months.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*G. T. Carswell, Henry E. Fisher, and Carl Horn, Jr., for defendant, appellant.*

WINBORNE, J. The evidence shown in the record on this appeal, when considered in the light most favorable to the State, is sufficient to take the case to the jury. Hence the assignments of error based on exceptions to the denial of defendant's motions, aptly made, for judgment as of nonsuit are not sustained.

But the exception upon which assignment of error No. 28 is based is well taken. It has its setting in this portion of the charge of the trial court to the jury: "Now, the defendant interposes the plea of an accident. The court will give you the legal definitions of an accident which would relieve one charged with criminal offense—if the jury finds that it was an accident: An accident is an event from an unknown cause, or an unusual and unexpected event from a known cause (such as) chance, casualty. By "accident" is meant an event causing damage happening unexpectedly and without fault. (s) Where a man, doing a lawful act in a careful and lawful manner, and without an unlawful intent, accidentally kills another, it is excusable homicide. But these facts must occur, and the absence of any one of them will involve guilt: When it appears that a killing was unintentional; that the perpetrator acted with no wrongful purpose in doing the homicidal act; that it was done while he was engaged in a lawful enterprise, and that it must not be the result of negligence, the homicide will be excused, on the score of an accident" (t). The exception relates to that portion between the letters (s) and (t).

The vice in this charge, as defendant contends, is that defendant's plea of an accidental killing is made unavailable to him if in the handling of the pistol he were merely negligent, rather than culpably negligent as the term is used in the law of crimes.

"Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts . . . Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *S. v. Cope,* 204 N.C. 28, 167 S.E. 456; *S. v. Miller,* 220 N.C. 660, 18 S.E. 2d 143; *S. v. Wooten,* 228 N.C. 628, 46 S.E. 2d 868; *S. v. Blankenship,* 229 N.C. 589, 50 S.E. 2d 724, and numerous others. And defendant was entitled to have the court so declare in connection with his plea that the killing was accidental.

For error in this respect, defendant is entitled to a new trial.

The exceptions covered by the remaining assignments of error need not be considered and treated, as they may not recur on another trial.

New trial.

JOHNSON, J., took no part in the consideration or decision of this case.