### LESTER LOWE v. DEPARTMENT OF MOTOR VEHICLES.

(Filed 26 June, 1956.)

**1. Arrest and Bail § 3—**

A highway patrolman has the right to arrest without a warrant a person whom he sees driving at a high and unlawful rate of speed. G.S. 20-141, 20-183.

**2. Assault § 8a—**

The provisions of G.S. 14-34 that the intentional pointing of a pistol at any person constitutes an assault are subject to the qualification that such intentional pointing of a pistol must be done without legal justification.

**3. Arrest and Bail § 5—**

An officer, in making a lawful arrest, is not justified in pointing a loaded weapon at the person to be arrested except in good faith upon necessity, real or apparent. G.S. 14-34.

**4. State § 3b—Evidence held to sustain finding that shooting of plaintiff by highway patrolman was result of negligence.**

The evidence was to the effect that a highway patrolman saw a car driven by plaintiff proceeding at an excessive and unlawful speed on the highway, that after a chase at high speed, at one time during which the cars collided while traveling abreast 90 miles an hour, plaintiff stopped his car, that none of the occupants attempted to leave or offered or threatened resistance, that the patrolman stopped his car parallel thereto, immediately got out and with a loaded pistol pointing toward plaintiff ran around the front of his car, hit his leg on the bumper, which had been bent forward in the collision, and fell against plaintiff's car, causing the weapon to discharge, thereby inflicting serious injury to plaintiff. *Held:* The evidence is sufficient to support the findings and conclusions of the Commission that plaintiff's injury was caused by the actionable negligence of the patrolman, and the award of damages under the State Tort Claims Act is upheld notwithstanding the Commission's misapprehension of law that a warrant was necessary for the arrest and that the pointing of the pistol by the officer was negligence irrespective of justification, it being apparent that the crucial findings were not affected by the errors.

**5. State § 3e: Appeal and Error § 49—**

The judgment of the Commission upon a hearing under the State Tort Claims Act will not be set aside on the ground that the findings were made under a misapprehension of the applicable law when it is apparent that such errors did not affect the result.

BARNHILL, C. J., dissents.

APPEAL by defendant from *Rousseau, J.,* September Term, 1955, WILKES.

Proceeding before North Carolina Industrial Commission under State Tort Claims Act. G.S. 143-291 *et seq.*

The appeal is from a judgment affirming an award of damages to plaintiff in the amount of $8,000.00 on account of serious and permanent injuries resulting from a bullet wound in his neck, negligently inflicted by a State Highway Patrolman acting within the scope of his employment by defendant.

The judgment is based on findings of fact and conclusions of law made by a Deputy Commissioner, adopted by the full Commission and affirmed by the court, to wit:

## "FINDINGS OF FACT"

"1. That N. C. Highway 268, in Wilkes County, North Carolina, runs generally in an easterly direction from the Town of North Wilkesboro

to the Town of Roaring River; that the said highway is 22 feet in width and is a 'roller coaster' type road; that Campbell's Garage is situate on the south side of said highway, approximately seven miles from North Wilkesboro; that there is a parking lot in front of the said garage, which is approximately fifty feet wide and seventy-five feet in length.

"2. That during the afternoon of 7 November 1953, the Highway Patrol of Wilkes County was notified by radio that there were three armed escapees of the Watauga County Prison Camp reportedly in Wilkes County; that one Patrolman Thomas C. Goodman, a member of the State Highway Patrol in Wilkes County, received this said message.

"3. That shortly after darkness, about 6:30 p.m. on 7 November 1953, the plaintiff, who was driving a 1951 Ford automobile belonging to one Odell Billings, was proceeding along the said highway within the town limits of North Wilkesboro in an easterly direction toward Roaring River on N. C. Highway 268; that at the time there were four other persons riding with the plaintiff; that the said Odell Billings was riding on the front seat between the plaintiff and one Robert Cole; that two men by the names of Lonnie Buchanan and Horace Byrd were riding in the rear seat.

"4. That, as the plaintiff approached the said city limits, he was driving at a high rate of speed; that, at the time, Patrolman Thomas C. Goodman, who was then 'on duty' as a member of the North Carolina State Highway Patrol, was sitting in his 1953 Plymouth patrol car near the said highway, a short distance within the said town limits.

"5. That after the plaintiff passed the said patrolman, operating the car at a high rate of speed as heretofore set forth, the patrolman immediately gave pursuit; that as the plaintiff proceeded along the said highway, he increased the speed of the car he was driving to approximately 90 miles per hour, that at the time Patrolman Goodman was sounding his siren and his red light and spotlight were burning; that as the two cars were about four miles from North Wilkesboro, Patrolman Goodman overtook the pursuing *(sic)* car and drove up beside it, but due to the fact that the two cars were meeting oncoming traffic, the said Patrolman had to decrease his speed and drop back behind the plaintiff's car; that after the approaching traffic had passed, he again drove his car up beside the plaintiff's car; that at the time the two cars were traveling at a speed of approximately 90 miles per hour; that the patrolman then steered his car toward the plaintiff's car, endeavoring to crowd the latter off the highway; that a collision resulted between the two cars, that as a result of the collision, the right front bumper of the patrol car was bent forward into an L-shape, the forward-most point of the bent bumper being aproximately 15 inches in front of the car.

"6. That Patrolman Goodman, in the course of his employment with the defendant as a highway patrolman, pursued speeders at such high rates of speed on the average of three or four times a month.

"7. That after the collision, the plaintiff again drove ahead of the patrolman; that the patrolman then, for the third time, drove up beside the plaintiff's car; that the plaintiff then commenced to decrease his speed and drove (to his right) up into the parking area of the said Campbell's Garage and stopped his car about 15 feet from the said highway; that the patrol car was stopped about two feet (to the left) from and parallel with the car the plaintiff was driving; that, as the patrol car was stopped, the front of the same was about even with the middle of the left door of the plaintiff's car.

"8. That Patrolman Goodman immediately got out of his car, pulled his .38 caliber pistol from his holster, cocked the same to a 'full cock,' negligently pointed it at the car in which the plaintiff was riding, and ran around the front of his car to the left door of the plaintiff's car; that he had the gun 'full cocked' and pointed at the plaintiff's car during the entire time that he was running around his car; that his eyes were on the occupants of the other car; that at no time did he look where he was going; that as he was passing the right front of his patrol car, one of his legs struck the said bent bumper and he fell forward; that, as he fell, the gun was discharged; that the patrolman did not fall to the ground, but fell against the plaintiff's car; that the window of the left door of the car in which plaintiff was sitting was closed; that the bullet penetrated the window and struck the plaintiff in the neck just below the left ear; that the said Patrolman Goodman at no time had a warrant for the arrest of the plaintiff or any person riding with him.

"9. That, from the time he started pursuing the plaintiff until after the plaintiff was shot, as heretofore set forth, Patrolman Goodman was an employee of the Department of Motor Vehicles, an agency of the State of North Carolina, and was acting during the entire time within the scope of his employment.

"10. That the said bullet lodged in the third cervical vertebra of the plaintiff, causing a complete paralysis; that the plaintiff subsequently underwent an operation for the removal of the bullet and a laminectomy of the second, third and fourth cervical vertebrae was performed; that the plaintiff is still paralyzed as a result of the said wound; that he is still unable to feed himself; that he has been in the hospital on nine occasions since 7 November 1953; that he has already incurred hospital and medical expenses exceeding the sum of $2300.00; that he will incur further hospital and medical treatment as a result of the said injury; that he has suffered excruciating pain as a result of the wound and will continue to suffer in the foreseeable future; that it is doubtful that he

will ever be able to walk again; that as a result of the said bullet wound, which was inflicted as a result of the said negligence of Patrolman Goodman, the plaintiff has been damaged in an amount much in excess of the sum of $8,000.

"Based upon the findings of fact, the Deputy Hearing Commissioner makes the following—

### "CONCLUSIONS OF LAW"

"1. In order for the plaintiff to recover of the defendant, under the Tort Claims Act, it is necessary that he show, from the preponderance of the evidence, that the damages suffered by him were the result of a negligent act of a State employee while acting within the scope of his employment and without contributory negligence on his part. G.S. 143-291.

"2. G.S. 14-34 reads as follows: 'If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of an assault, and upon conviction of the same shall be fined, imprisoned, or both, at the discretion of the court.' In the case of *State v. McLean,* 234 N.C. 283, at p. 286, *Justice Valentine,* citing cases, stated, 'The violation of a statute or ordinance, intended and designed to prevent injury to persons or property, whether done intentionally or otherwise, is negligence *per se,* and renders one civilly liable in damages, if its violation proximately results in injury to another; for, in such case, the statute or ordinance becomes the standard of conduct or the rule of the prudent man.'

"Certainly, there is no question but what G.S. 14-34 was enacted to prevent injury to persons. Patrolman Goodman violated this statute in pointing his pistol at the plaintiff and the inhabitants of the car *unless* he was acting within his legal rights as an officer of the law in such use of his weapon. From a review of the decisions of our Court, it is apparent that the patrolman had no authority to so use his gun. An officer of the law, in seeking to arrest *for a misdemeanor,* cannot assault the misdemeanant with his pistol. *State v. Sigman,* 106 N.C. 728. There is no question but what the plaintiff's conduct in operating his car, as heretofore set forth, amounted to no more than a misdemeanor. (Italics added.)

"3. In pointing his gun at the plaintiff, *as heretofore set forth,* Patrolman Goodman was negligent *per se* and such negligence was the sole proximate cause of the injuries received by the plaintiff. (Italics added.)

"4. Negligence was defined in the case of *Mikeal v. Pendleton,* 237 N.C. 690, as 'a failure to perform some duty imposed by law. It is doing other than, or failing to do, what a reasonably prudent man would

have done under the same or similar circumstances. In short, negligence is a want of due care; and, in determining whether due care has been exercised in any given situation by the party alleged to have been negligent, reference must be had to the facts and circumstances of the case, and to the surroundings of the party at the time, and he must be judged by the influence which those facts, and his surroundings, would have had upon a man of ordinary prudence in shaping his conduct, if he had been similarly situated.'

" 'The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others upon coming in contact with them. The degree of care must be commensurate with the dangerous character of the article.' *Luttrell v. Mineral Company,* 220 N.C. 782, and cases cited. 'One who has in his possession or under his control an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury thereby.' 56 Am. Jur., p. 1007.

"Certainly in endeavoring to make the arrest, Goodman did not use that high degree of care required by law in running toward the plaintiff's car in the night-time, not looking where he was going, with his pistol fully cocked and pointed toward the plaintiff's car's inhabitants. It cannot be said that the officer acted as a reasonably prudent man under the same or similar circumstances. Instead of taking exceptional precautions to prevent an injury to the unknown persons of the car, he threw caution to the winds and by his gross negligent conduct left a young man afflicted for life.

"5. That there was negligence on the part of Patrolman Goodman in pointing his fully cocked pistol at the plaintiff's car and running toward it, *as heretofore set forth;* that such negligence was the sole proximate cause of the injuries suffered by the plaintiff; that Patrolman Goodman, at the time, was an employee of the Department of Motor Vehicles, an agency of the State of North Carolina; that the said employee was acting within the scope of his employment. (Italics added.)

"6. That there was no contributory negligence on the part of the plaintiff."

Defendant appealed, assigning as error designated portions of the findings of fact and conclusions of law and the judgment predicated thereon.

*Allen, Henderson & Williams for plaintiff, appellee.*

*Attorney-General Rodman, Assistant Attorney-General Love and Harvey W. Marcus, Member of Staff, for defendant, appellant.*

BOBBITT, J.   Careful consideration of the evidence impels the conclusion that there was competent evidence to support the particular findings of fact made by the Commission and its ultimate finding or conclusion that plaintiff's injuries were caused by the actionable negligence of defendant.   Hence, assignments of error challenging the sufficiency of the evidence to support the findings of fact are overruled.

The more serious question is whether the Commission made its ultimate finding or conclusion of actionable negligence under misapprehension of the applicable law.   *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324.

Negligence is a mixed question of fact and of law.   *McCrowell v. R. R.,* 221 N.C. 366, 20 S.E. 2d 352, and cases cited.   In a jury trial, the presiding judge declares and explains the law arising on the evidence in the case.   G.S. 1-180.   Guided by such instructions, the jury resolves the disputed factual elements.   By its verdict, the jury declares the ultimate finding.

The Commission makes both findings of fact and conclusions of law. When dealing with a composite such as negligence, it might be possible by deft discrimination to isolate the element of fact from the element of law; but, since each permeates the whole concept, ordinarily the findings of fact reflect the legal aspect and the conclusions of law reflect the factual aspect.   Such a situation obtains here.   Finding of fact No. 8 includes a finding that the patrolman *negligently* pointed his pistol at the car in which plaintiff was riding.   Conclusion of law No. 4 sets forth factual details and the factual conclusion that the patrolman failed to exercise due care under the circumstances.

The Commission found that the patrolman had no warrant for the arrest of plaintiff or any person riding with him.   All the evidence, including that of the patrolman, supports this finding.   But appellant contends that under the Commission's findings, the patrolman "found" plaintiff violating the provisions of G.S., Ch. 20, Art. 3, specifically G.S. 20-141.   It is true that in such case, as appellant contends, the patrolman was clothed with legal power to arrest plaintiff for the violation of G.S. 20-141, a misdemeanor under the statute relating to motor vehicles, "on sight or upon warrant."   G.S. 20-183; *S. v. Mobley,* 240 N.C. 476, 83 S.E. 2d 100.   However, it does not appear that the absence of a warrant, insofar as an arrest for the misdemeanor was concerned, was given any significance by the Commission.

Appellant contends that the Commission, in conclusions of law Nos. 2 and 3, did not state accurately the applicable law; and that the ultimate finding of actionable negligence was predicated, in whole or in part, upon the erroneous conclusion that in pointing his gun at the plaintiff, under the circumstances set forth, the patrolman was guilty of negligence *per se.*

If *any person* intentionally points a pistol at *any person*, this action is in violation of G.S. 14-34 and constitutes an assault. *S. v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768; *S. v. Trollinger,* 162 N.C. 618, 77 S.E. 957; *S. v. Limerick,* 146 N.C. 649, 61 S.E. 568. Moreover, such action, being in violation of the statute, is negligence *per se;* and if the pistol accidentally discharges, the injured person may recover damages for actionable negligence.

We agree with appellant that the literal provisions of G.S. 14-34 are subject to the qualification that the intentional pointing of a pistol is in violation thereof only if done wilfully, that is, without legal justification. A different interpretation would contravene the manifest intention of the General Assembly. *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410; *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505; *S. v. Earnhardt,* 170 N.C. 725, 86 S.E. 960.

Even so, legal justification must be made to appear, whether it be an individual who intentionally points a pistol at his assailant in the exercise of a perfect right of self-defense or an officer who does so in good faith in the discharge of his official duty and when necessary or apparently necessary either to defend himself or to make a lawful arrest or otherwise to perform his official duty. But the mere fact that he is an officer engaged in the performance of *an* official duty does not perforce exempt him from the provisions of the statute.

When the pistol fired, the car operated by plaintiff had stopped. The occupants were aware that an officer was in pursuit. None of the occupants attempted to leave. No resistance was offered or threatened. The patrolman made no call that the occupants of the car get out nor did he give notice that they were under arrest. No word was spoken. *Immediately,* when the car stopped, he got out of the patrol car, with his pistol cocked and pointed in the direction of the car plaintiff was driving; and in running towards that car with his pistol so pointed, without observing what was in his path, he tripped and the gun fired. This is the purport of the findings. Moreover, the uncontradicted evidence is to that effect.

There is no finding of fact to the effect that the patrolman had reasonable grounds for the belief that the occupants of the car were armed or desperate men. Nor is there a finding of fact that the patrolman's conduct was necessary or reasonably appeared to be necessary to defend and protect himself from bodily harm. Nor is there a finding of fact that the patrolman believed or had reasonable ground to believe that the men in this car were the escapees (they were not) from the Watauga County Prison Camp. Moreover, there was no request for such findings. On the contrary, both in the findings of fact and in conclusion of law No. 4, the Commission made manifest its determina-

tion that the circumstances did not justify the action of the patrolman. We must keep in mind that the patrolman's conduct is to be considered in relation to actionable, not culpable, negligence. Hence, we strike from the last sentence of paragraph 4 these words: ". . . he threw caution to the winds and by his gross negligent conduct left a young man afflicted for life." If warranted by the evidence, which is not conceded, it is not material to plaintiff's right to recover for actionable negligence.

While the general statement of legal principles may have been incomplete in that the Commission did not discuss the qualification, namely, that G.S. 14-34 did not apply to a person acting with legal justification, we think it appears plainly that the Commission rejected appellant's contention as to legal justification and found that the patrolman *without legal justification* pointed his pistol at plaintiff or at the car in which he was riding, and that this act, considered with his other conduct at the time, constituted actionable negligence.

*U. S. v. Polk*, 199 F. 2d 889, relied on "very heavily" by defendant, is factually distinguishable. In that case, a federal officer was pursuing through the woods a man who fled from the site of an illicit distillery. The officer's pistol accidentally discharged when he jumped a ditch. There was no finding of fact that the officer had pointed the pistol intentionally at the man or in his direction. In short, the cited case is not regarded as controlling in relation to the facts here presented.

We conclude that the evidence supports the particular findings; that the particular findings support the ultimate conclusion that plaintiff's injuries were caused by defendant's actionable negligence; and that the findings made dispel the idea that they were based in any material aspect on misapprehension of the applicable law. Indeed, the findings negative legal justification for defendant's conduct in pointing the pistol. Hence, the judgment of the court below is

Affirmed.

BARNHILL, C. J., dissents.