STATE OF NORTH CAROLINA v. JAMES MARK ADAMS
No. 6821SC280

(Filed 18 September 1968)

**1. Criminal Law § 104— nonsuit motion — consideration of evidence**

On motion to nonsuit, the evidence must be considered in the light most favorable to the State, and the State is entitled to the benefit of every reasonable inference that may be drawn from the evidence.

**2. Criminal Law § 106— nonsuit motion — sufficiency of evidence**

If there is any competent evidence to support the charge contained in the bill of indictment, the case is one for the jury.

**3. Homicide § 21— manslaughter prosecution — sufficiency of evidence of 14-year-old boy's guilt in shooting his father**

In a prosecution upon indictment charging a 14-year-old defendant with manslaughter for the killing of his father, the issue of defendant's guilt is properly submitted to the jury where the evidence tends to show that, (1) during the afternoon of the killing the father, who had been continually drinking beer, made threats repeatedly in front of the defendant that he was going to kill defendant's mother when she returned home from work, (2) the defendant put four cartridges in a 30-30 rifle which he hid in a cocked position under a sofa in the garage, (3) upon the mother's arrival home the father ordered her into the garage and started towards her when she refused to go, whereupon the defendant picked up the rifle and told his father to stop, and that (5) as the defendant was retreating before his father through the door of the garage, the rifle fired, striking the father in the chest.

STATE *v.* ADAMS

**4. Homicide § 27— instructions on accidental killing — failure to instruct on culpable negligence**

Where, in a prosecution for manslaughter, defendant relies upon the defense of accidental killing, an instruction to the effect that where a man is doing a lawful act in a careful manner and without any unlawful intent and accidentally kills another the homicide is excusable, but that the absence of any of these elements would involve guilt, *is held* erroneous since it leaves the jury free to consider ordinary rather than culpable negligence as sufficient to deprive to defendant of the plea of accidental killing.

**5. Homicide § 10— child's right to kill in defense of a parent**

A person has the right to kill not only in his own self-defense but also in the defense of another who stands in a family relationship to him, and this right extends to the defense of one's parent; the privilege includes the right of a child to kill his father in defense of the child's mother and the father's wife.

**6. Homicide § 10— limitation of right to kill in defense of another**

The right to kill in defense of another cannot exceed such other's right to kill in his own defense, including the requirement of reasonable apprehension of death or great bodily harm.

**7. Homicide § 13— right to rely on more than one defense**

Defense pleas of accident and self-defense are not necessarily inconsistent; defendant may rely on more than one defense and is not required to make an election.

**8. Assault and Battery § 5— assault by pointing a gun — element of wilfulness**

The literal provisions of G.S. 14-34 are subject to the qualification that the intentional pointing of a gun is in violation of the statute only if done wilfully, that is, without legal justification.

**9. Homicide § 28— instructions on self-defense required by the evidence**

In a prosecution upon indictment charging a 14-year-old defendant with manslaughter for the killing of his father, the theory of the State's case was that the father died as a result of defendant's unlawful act in pointing a gun at the father. Although defendant contended that the discharge of the gun was accidental, he also contended that he loaded and hid the gun in order to protect his mother from serious harm or death at the hands of his father. There was evidence that on the afternoon of the tragedy the defendant heard his father make numerous threats to kill his wife, and that the father had been stopped from harming his wife on a prior occasion only when defendant's brother fired a shot in the air. *Held:* The failure of the trial judge to instruct the jury on the law of self-defense and defense of others is error, entitling the defendant to a new trial.

BROCK, J., concurring in part and dissenting in part.

APPEAL by defendant from *Armstrong, J.,* 1 April 1968 Session FORSYTH Superior Court.

By indictment proper in form, defendant, a 14-year-old boy, was charged with manslaughter for the killing of his father, Hayes Baxter Adams, with a 30-30 rifle on the evening of 7 May 1967.

The tragedy occurred in the yard and garage of the family home located on Bramblewood Trail in or near Winston-Salem. Defendant, his mother and young sister were the only eyewitnesses to the occurrence. The mother testified as a witness for the State and was recalled as a witness for the defendant.

Evidence for the State and the defendant tended to show the following:

The defendant, his parents and young sister lived together; defendant's 20-year-old brother lived with them in and prior to 1966 but on the date in question was serving in the Armed Forces.

On Sunday, 7 May 1967, the deceased was the operator of the Wedgewood Lounge at the Wedgewood Golf Course in or near Winston-Salem. Defendant's mother was regularly employed during weekdays at the office of the N. L. R. B. in Winston-Salem. Around 12:30 p.m., the deceased called his wife and advised that the lounge was full of people and that he needed some help. Mrs. Adams went to the lounge but found that her husband was the only person present. Observing that he was drinking, she proceeded to take charge of the lounge while Mr. Adams gathered up some beer and went home.

Throughout the afternoon, while in the home with the defendant and his young sister, Mr. Adams drank one beer after the other. He called his wife on the telephone several times, calling her vile names and threatening to harm her when she returned home. On one occasion he stated, "You g . . . d . . . slut, just as soon as you get home I am going to beat the living hell out of you. I'll kill you." During the afternoon, Mr. Adams kept telling the defendant that he was going to kill his mother, declaring "I am going to kill that damn bitch. I am going to scatter her guts from room to room."

Defendant testified that he was afraid that his father was going to kill his mother when she came home, stating that his father looked like he was out of his mind. Late in the afternoon, Mr. Adams required the defendant to go to the lounge and get him some more beer.

The evidence further disclosed that the deceased on previous occasions had threatened, abused and assaulted his wife. In May 1966,

he had grabbed Mrs. Adams by her hair, swung her around and hit her on her head. Defendant's brother had tried to restrain his father, after which he threatened to kill the whole family. Mrs. Adams ran out the door to escape, with Mr. Adams following her; he backed her against a car and swung at her. Defendant's brother took a pistol and told his father to leave his mother alone; Mr. Adams told defendant's brother that he was not man enough to shoot, whereupon the brother fired the gun several times into the air, and Mrs. Adams and the children went to a neighbor's house where they awaited the police.

Around 6:00 p.m. on the afternoon of the tragedy now before us, defendant took a 30-30 rifle, which he had never fired or used before, from the house, put four cartridges in it, and left the rifle in a cocked position under a cushion of a sofa in the garage. Defendant kept going out to the garage so that he might see his mother when she came home from the lounge and that he might signal her not to stop at the home. Mr. Adams called the defendant into the house several times and told him how he was going to kill Mrs. Adams.

Around 8:00 p.m., defendant saw his mother driving down the street and signaled to her to drive on. Mrs. Adams drove past the house once but returned and drove into the yard. Mr. Adams immediately went from the house into the garage and ordered his wife to throw him the keys to both automobiles, which she did. He then told Mrs. Adams to get inside the garage, but she remained behind the cars and he started after her. At that point, defendant picked up the rifle and told his father to stop. Mrs. Adams told the defendant to put the gun down and "We'll go, we'll run." Mr. Adams saw his son with the rifle and began advancing toward him saying, "You give me that gun or I'll make you use it." Defendant proceeded to walk backward in the garage and through a door leading to the outside; there was a six-inch drop from the level of the garage to the sidewalk outside the door and as defendant backed out of the door, the rifle fired, the bullet striking Mr. Adams in his chest. He fell backward in the garage and died soon thereafter.

Defendant testified that he did not intend to shoot his father and did not intentionally pull the trigger; that he did not know what caused the gun to discharge. He stated that he had the gun for the purpose of shooting into the air if necessary to keep his father from harming his mother.

The jury found the defendant guilty as charged and from an active prison sentence of not less than three nor more than ten years, defendant appealed.

*Attorney General T. Wade Bruton by Staff Attorneys Dale Shep-
herd and Andrew A. Vanore, Jr., for the State.*

*Smith, Moore, Smith, Schell & Hunter by Norman B. Smith for
defendant appellant.*

BRITT, J.

The defendant assigns as error the failure of the court to sustain
his motion for judgment as of nonsuit.

[1-3]    It is well settled in this jurisdiction that in passing upon
a motion for judgment as of nonsuit in a criminal prosecution, we
must consider the evidence in the light most favorable to the State,
and if there is any competent evidence to support the charge con-
tained in the bill of indictment, the case is one for the jury. *State v.
Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768; *State v. Ritter,* 239 N.C.
89, 79 S.E. 2d 164. Furthermore, in the consideration of such motion,
the State is entitled to the benefit of every reasonable inference that
may be drawn from the evidence. *State v. Ritter, supra; State v.
Gentry,* 228 N.C. 643, 46 S.E. 2d 863. Applying the rule as stated in
numerous decisions of our Supreme Court with respect to such mo-
tions, we hold that the State's evidence in the trial below was suffi-
cient to carry the case to the jury. The assignment of error is over-
ruled.

[4]    Defendant also assigns as error the following portions of the
charge relating to defendant's plea of accident:

I suppose at this point I should state to you what meaning
the law attaches to the term "accident." I instruct you that an
accident is an event from an unknown cause, or it may be an
unusual and unexpected event from a known cause; that is,
some chance or casualty, and it means an event causing damage
or death unexpectedly and without fault.

So, then, members of the jury, where a man is doing a lawful
act in a careful manner and without any sort of unlawful intent,
accidentally kills another, of course it is an excusable homicide.
But these facts must concur, and in the absence of any one of
them will involve guilt.

The assignment of error relating to the second paragraph of the
quoted portion of the charge is well taken and is sustained.

In *State v. Kluckhohn, supra,* the defendant assigned as error a
portion of the charge directed to the defendant's plea of misadven-
ture or accident stated as follows: "The defendant having entered a
plea of Not Guilty, contends that the killing was through misad-

venture or accident and the Court instructs you that where one does a lawful act in a careful and lawful manner and without any unlawful intent, accidentally kills, that is excusable homicide, but these facts must all appear and the absence of any one of these elements will involve guilt. Accident is an event that happens unexpectedly and without fault."

In an opinion written by Denny, J. (later C.J.), our Supreme Court declared:

> The vice in this instruction is that it leaves the jury free to consider ordinary rather than culpable negligence as sufficient to make unavailing to the defendant the plea of accidental killing. *S. v. Early,* 232 N.C. 717, 62 S.E. 2d 84; *S. v. Wooten,* 228 N.C. 628, 46 S.E. 2d 868; *S. v. Miller,* 220 N.C. 660, 18 S.E. 2d 143; *S. v. Cope,* 204 N.C. 28, 167 S.E. 456. A mere negligent departure from the conduct referred to in the challenged portion of the charge would not necessarily involve or constitute criminal guilt. A departure to be criminal would have to consist of an intentional, willful, or wanton violation of a statute or ordinance enacted for the protection of human life or limb which resulted in injury or death. Such a violation of a statute would constitute culpable negligence. *S. v. Cope, supra* "Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts. *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580; *S. v. Rountree,* 181 N.C. 535, 106 S.E. 669. Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. . . . But, an unintentional violation of a prohibitory statute or ordinance, unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, is not such negligence as imports criminal responsibility." *S. v. Cope, supra.*

We hold that the charge in the instant case contains the same error declared in *Kluckhohn.*

Defendant assigns as error the failure of the trial judge to charge the jury on the doctrine of self-defense and defense of another. This assignment of error is well taken.

[5, 6]　A person has the right to kill not only in his own self-defense but also in the defense of another who stands in a family relationship to him, and this right extends to the defense of one's parent. *State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461; *State v. Anderson,* 222 N.C. 148, 22 S.E. 2d 271. The privilege includes the right of a

child to kill his father in defense of the child's mother and the father's wife. *State v. Carter, supra.* However, the right to kill in defense of another cannot exceed such other's right to kill in his own defense, including the requirement of reasonable apprehension of death or great bodily harm. 4 Strong, N. C. Index 2d, Homicide, § 10; *State v. Gaddy,* 166 N.C. 341, 81 S.E. 608.

[7]    Defense pleas of accident and self-defense are not necessarily inconsistent. "The defendant's plea of not guilty entitled him to present evidence that he acted in self-defense, that the shooting was accidental, or both. Election is not required. The defendant may rely on more than one defense." Higgins, J., in *State v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83.

[8]    The theory of the State's case was that on the occasion of the fatal shooting, the defendant was engaged in an unlawful act — pointing a gun in violation of G.S. 14-34 — the result of which caused the death of the deceased. But the literal provisions of G.S. 14-34 are subject to the qualification that the intentional pointing of a gun is in violation thereof only if done willfully, that is, without legal justification. *Lowe v. Department of Motor Vehicles,* 244 N.C. 353, 93 S.E. 2d 448.

[9]    Although the defendant contended that the actual discharge of the gun was not intended, he also contended that he hid the loaded gun in the garage and later took it in his hands for the purpose of protecting his mother from serious harm or death at the hands of his father. Proper instructions on self-defense and defense of another would have enabled the jury to determine whether the defendant was justified in having the loaded gun in his possession at the time of the fatality.

The tender age of the defendant presented a more compelling reason why the jury should have been charged on the principles of self-defense and defense of another in addition to the defense of accident. The evidence was plenary that throughout the afternoon preceding the family tragedy, the 14-year-old defendant heard his father make numerous and repeated threats to kill the defendant's mother. In addition to that, the evidence disclosed that defendant had witnessed other instances in which the deceased, when drinking, had not only threatened and abused the mother, but his attempt to seriously harm her on one occasion was stopped only when defendant's brother fired a shot into the air. Although the deceased had no weapon that was visible immediately before the fatal shot, the defendant was entitled to have the jury pass upon the issue of "reasonable apprehension of death or great bodily harm" to his mother or even to himself, and to

determine if the defendant was justified in taking the loaded gun into his hands and pursuing the course which he followed.

It is true that the oral testimony of defendant was more pointed toward the defense of accident, but defendant's immaturity in knowing and being able to relate exactly what happened at the time of the tragedy must be considered.

The other assignments of error asserted by defendant will not be discussed, as they may not arise upon a retrial of this case.

Because of the errors in the trial court's charge, the defendant is entitled to a new trial and it is so ordered.

New trial.

PARKER, J., concurs.

BROCK, J., concurs in part and dissents in part.

BROCK, J., concurring in part and dissenting in part: I feel compelled to record my dissent from the majority holding that defendant was entitled to have the case also submitted to the jury upon the theories of self-defense and defense of another; however, I do agree with the majority opinion that the defendant is entitled to a new trial for error in the charge.

One may kill in defense of himself, or his family, when not actually necessary to prevent death or great bodily harm, if he believes it to be necessary and has reasonable grounds for the belief. *State v. Fowler,* 250 N.C. 595, 108 S.E. 2d 892. However there must be evidence from which the jury may find that the defendant believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm to himself or his mother, before he may seek refuge in the principle of self-defense and have the jury pass upon the reasonableness of such belief. *State v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620.

In the case we are considering, the defendant's avowed purpose in getting the rifle out to the garage, and in loading it, was to fire it into the air as he had seen his brother do with a pistol about a year before. On direct examination he testified: "I was going to fire it into the air to scare him . . . if he started to hurt her or started for her . . . my brother did it and it brought the neighbors down and he went inside and stopped bothering her." And he stated that was what he intended to do this time.

And, on cross-examination, in response to the Solicitor's question

as to whether he intended to use the gun on his father, the defendant stated: "No, sir. I wasn't going to use it on him at all . . . . I wasn't going to use it on my father." The defendant further testified that when his mother saw him and told him to put the gun down and run, that he didn't put it down because "I was going out the back door to throw it down the hill." It was while backing out the back door that the rifle discharged, the defendant stating that he may have come in contact with the door when backing out, but that he did not pull the trigger. Also the defendant testified that he was his father's favorite son, and that his father had never abused him in punishment or anything. And there was no showing of any threat of violence to defendant on this occasion.

It seems fairly obvious from all of the testimony that defendant's mother was not afraid of what the deceased might do to her. She had his threats relayed to her by the children over the telephone and, according to her testimony, the deceased had also told her over the telephone that he was going to beat her when she got home. Nevertheless, she went home as usual. Also, according to her testimony, when she arrived home and the deceased threatened her, she made no effort to run away from him even up to the point that she says she first saw defendant with the rifle in his hand.

I agree with the majority opinion that a plea of not guilty entitles a defendant to present evidence that he acted in self-defense or defense of another, and that the shooting was an accident; and that defendant is not required to elect to pursue only one of such defenses. However, there must be *evidence* to support a defense before he is entitled to have the jury instructed upon the defense. In this case the entire evidence for the defendant points to an accidental shooting, and such evidence entitled the defendant to have the jury properly instructed upon an accidental homicide. But, although the evidence may support a conclusion that defendant loaded, secreted, and later picked up the rifle in an unwise effort to assist his mother, in my view there is no evidence in the present record to justify submitting the case to the jury upon the theory of self-defense, or defense of another. I agree with the trial judge upon this phase of the case. The courts should not interpose defenses for a defendant whose entire evidence and testimony rejects those defenses.