UNITED STATES of America,
Plaintiff—Appellee,

v.

Armando TREVINO–TREVINO,
aka Carlos Morales–Duran,
Defendant—Appellant.

No. 05–50317.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2006.

Decided May 4, 2006.

Timothy F. Salel, Esq., Office of the U.S. Attorney, San Diego, CA, for Plaintiff-Appellee.

Michelle A. Villasenor-Grant, Esq., Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant-Appellant.

Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.

MEMORANDUM *

Armando Trevino–Trevino ("Trevino") appeals his sentence of 46 months' incarceration and 3 years of supervised release for violation of 8 U.S.C. § 1326, being a deported alien found in the United States. We vacate the sentence and remand for resentencing.

Because the parties are familiar with the factual and procedural histories of this case, we will not recount them here. We review the district court's application of the Sentencing Guidelines de novo. *United-ed States v. Rodriguez–Rodriguez,* 393 F.3d 849, 856 (9th Cir.2005), *cert. denied,* — U.S. ——, 125 S.Ct. 2280, 161 L.Ed.2d 1074 (2005).

I

Trevino argues that the district court erred when it applied a 16–level sentencing enhancement. We agree. United States

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 2L1.2(b)(1)(A)(ii) permits the sentencing judge to apply a 16–level enhancement if a defendant was deported following a conviction for a "crime of violence." That manslaughter is "specifically enumerated as a crime of violence in [the Application Notes to USSG § 2L1.2] indicates that it is a crime of violence." *United States v. Velasquez–Reyes,* 427 F.3d 1227, 1229 (9th Cir.2005). However, Trevino's conviction for involuntary manslaughter under North Carolina law is too broad to come within the Sentencing Guidelines' definition of manslaughter.

In reaching this conclusion, we first follow the categorical approach set forth in *Taylor v. United States,* 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), under which the court does not consider the conduct that led to the defendant's conviction, but only the statutory definition of the crime, in order to compare the state's definition of the crime with the generic definition of that same crime. *Velasquez–Reyes,* 427 F.3d at 1229 (citing *United States v. Fish,* 368 F.3d 1200, 1202 (9th Cir.2004)).

Under this approach, we look first to the North Carolina case law definition of involuntary manslaughter: "the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163, 167 (1984) (citing *State v. Ward,* 286 N.C. 304, 210 S.E.2d 407 (1974)) *(vacated on other grounds,* 428 U.S. 903, 96 S.Ct. 3206, 49 L.Ed.2d 1207 (1976)); *State v. Redfern,* 291 N.C. 319, 230 S.E.2d 152 (1976) *(overruled on other grounds by State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993)). In North Carolina, "culpable negligence" is

"such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences." *State v. Early,* 232 N.C. 717, 62 S.E.2d 84 (1950).

This state definition must be compared to "manslaughter" as it is used by the Sentencing Guidelines, or the offense's "generic, core meaning." *United States v. Corona–Sanchez,* 291 F.3d 1201, 1204 (9th Cir.2002) *(overruled on other grounds by United States v. Vidal,* 426 F.3d 1011 (9th Cir.2005)). The United States Code defines involuntary manslaughter as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Thus, involuntary manslaughter is an unintentional killing that "evinces a wanton or reckless disregard for human life but not of the extreme nature that will support a finding of malice." *United States v. Paul,* 37 F.3d 496, 499 (9th Cir.1994) (quoting *United States v. Lesina,* 833 F.2d 156, 159 (9th Cir. 1987)).

In comparing the two definitions of involuntary manslaughter, the federal statute requires "a wanton or reckless disregard for human life," while a conviction in North Carolina requires only the "recklessness or carelessness [ ] import[ing] a thoughtless disregard of consequences." A reckless disregard for human life is something more than a thoughtless disregard of consequences. Because a defendant convicted of involuntary manslaughter in North Carolina may be less culpable than would be required for conviction under the federal statute, the North Carolina crime is not categorically manslaughter.

Neither can the state crime be considered a "crime of violence" under *Taylor'*s

second step, the "modified categorical approach," which permits us to consider whether a jury actually was required to find or the defendant admitted to all elements of the generic offense. *Corona-Sanchez*, 291 F.3d at 1211 (citing *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143). The record in this case, however, contains no evidence that Trevino admitted to the elements of the generic offense.

Finally, the North Carolina conviction cannot be considered a "crime of violence" under the Sentencing Guidelines as "an offense under ... state ... law that has as an element the use, attempted use, or threatened use of physical force against the person of another," because a defendant can be convicted of the North Carolina offense for an omission. Logically, one cannot use, attempt to use or threaten to use force against another in failing to do something. On the record before us, the North Carolina conviction is therefore not a conviction for a "crime of violence" under USSG § 2L1.2, and the district court erred in applying the 16–level enhancement.

## II

Trevino also claims that the district court erred in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) when it imposed a sentence above two years in reliance on the allegation that Trevino had been deported following a conviction for an aggravated felony. 8 U.S.C. § 1326(b)(1). Trevino's argument that the district court unduly expanded the *Almendarez–Torres* exception to *Apprendi* to situations where: (1) the fact of the prior conviction is neither alleged in the indictment nor admitted by the defendant; and (2) the fact at issue is the date of a prior deportation, not merely the fact of a prior conviction, fails under our case law. *See*

*United States v. Pacheco–Zepeda*, 234 F.3d 411 (9th Cir.2000); *United States v. Castillo–Rivera*, 244 F.3d 1020, 1024 (9th Cir.2001).

**SENTENCE VACATED; REMANDED.**