Chief Justice Rehnquist, Circuit Justice.
Applicants, North Carolina officials charged with administering t¿he State’s elections, seek a stay of a decision of the Supreme Court of North Carolina invalidating North Carolina’s 2001 state legislative redistricting plan under the North Carolina Constitution. The application is denied.
The Supreme Court of North Carolina held that the 2001 plan violated what is known as the “whole county provision” of the North Carolina Constitution, which provides that “no *1302 county shall be divided in the formation of a senate or representative district,” N. C. Const., Art. II, §3(3). See 355 N. C. 354, 363, 562 S. E. 2d 377, 384 (2002). The court thus affirmed a lower court injunction enjoining applicants from conducting any elections under the 2001 plan and ordered that a new plan be drawn. Id., at 359-360, 386, 562 S. E. 2d, at 382, 398. The court directed the state trial court to conduct a hearing on whether it is feasible for the state legislature to develop a new plan for the 2002 elections. If it is not, then the trial court is directed to solicit plans and adopt one. Id., at 385, 562 S. E. 2d, at 398.
The Supreme Court of North Carolina recognized, however, that requirements of federal law will preclude the new plan from giving full effect to the “whole county provision.” Id., at 371,381,562 S. E. 2d, at 389,396. The court therefore “harmonized” the state constitutional provision with federal law, ordering that the new plan “must preserve county lines to the maximum extent possible, except to the extent counties must be divided to comply with Section 5 of the Voting Rights Act [of 1965, 79 Stat. 439, as amended, 42 U. S. C. § 1973c (1994 ed.)], and to comply with Section 2 of the Voting Rights Act, and to comply with the U. S. Constitution, including the federal one-person one-vote requirements.” Id., at 359, 562 S. E. 2d, at 382. The court cited decisions in four other States that have reconciled similar county boundary requirements with federal law. Id., at 372, n. 3, 562 S. E. 2d, at 390, n. 3 (citing In re Apportionment of Colo. Gen. Assembly, 45 P. 3d 1237 (Colo. 2002); Hellar v. Cenarrusa, 106 Idaho 571, 574-575, 682 P. 2d 524, 527-528 (1984); Fischer v. State Bd. of Elections, 879 S. W. 2d 475,479 (Ky. 1994); State ex rel. Lockert v. Crowell, 631 S. W. 2d 702, 714-715 (Tenn. 1982)). And the Supreme Court of North Carolina ordered that the trial court shall seek preclearance of the new plan, with respect to the districts in the 40 North Carolina counties that are covered jurisdictions under §5 of the Voting *1303 Rights Act, before elections are held. 355 N. C., at 385, 562 S. E. 2d, at 398.
Applicants contend that a stay is warranted because the Supreme Court of North Carolina’s decision “defies the Voting Rights Act” and directs applicants “to violate the Voting Rights Act and to administer or enforce unprecleared state constitutional provisions.” Application 13, 20. In support of these assertions, applicants rely on a 1981 Department of Justice (DOJ) letter that objected to the “whole county provision.” In 1981, North Carolina submitted both its 1981 redistricting plan, which was faithful to the “whole county provision,” and the “whole county provision” itself to the DOJ. The DOJ objected to both, stating that it was “unable to conclude that this amendment, prohibiting the division of counties in reapportionments, does not have a discriminatory purpose or effect.”. App. 2 to Application 1. The letter also stated that “until the objection is withdrawn or [a] judgment from the [United States District Court for the] District of Columbia is obtained, the effect of the objection by the Attorney General is to make the [whole county provision] legally unenforceable.” Id., at 2.
The Supreme Court of North Carolina rejected applicants’ view that this letter bars any consideration of the whole county provision in redistricting. In its view, other statements in the letter demonstrate that the letter “merely disallows a redistricting plan that adheres strictly to a ‘whole county* criterion without complying with the [Voting Rights Act].” 355 N. C., at 374, 562 S. E. 2d, at 391. The court quoted the following statement from the DOJ letter: “ ‘This determination with respect to the jurisdictions covered by Section 5 of the Voting Rights Act should in no way be regarded as precluding the State from following a policy of preserving county lines whenever feasible in formulating its new districts. Indeed, this is the policy in many states, subject only to the preclearance requirements of Section 5, *1304 where applicable.’” Id., at 372-373, 562 S. E. 2d, at 390. The court thought this interpretation of the letter consistent with DOJ administrative guidance that provides “‘criteria which require the jurisdiction to . . . follow county, city, or precinct boundaries ... may need to give way to some degree to avoid retrogression.’” Id., at 373, 562 S. E. 2d, at 391 (quoting 66 Fed. Reg. 5413 (2001)) (emphasis added).
A “single Justice will grant a stay only in extraordinary circumstances.” Whalen v. Roe, 423 U. S. 1313, 1316 (Marshall, J., in chambers). Applicants do not satisfy the threshold requirement for the issuance of a stay. There is not a reasonable probability that four Members of this Court will vote to grant certiorari to resolve what is largely a dispute about the meaning of a single DOJ letter from 1981. See Lucas v. Townsend, 486 U. S. 1301,1304 (1988) (Kennedy, J., in chambers). This issue, which has few if any ramifications beyond the instant case, does not satisfy any of the criteria for the exercise of this Court’s discretionary jurisdiction. See this Court’s Rule 10.
Applicants cite two cases in which the Court issued stays enjoining a covered jurisdiction from conducting imminent elections “under an unprecleared voting plan.” Lopez v. Monterey County, 519 U. S. 9, 19, 21 (1996); Clark v. Roemer, 500 U. S. 646, 654-655 (1991). This case does not present the same situation. The Supreme Court of North Carolina ordered that the new plan would have to be precleared before elections could be held in the 40 covered counties. On remand, the trial court has already made clear its understanding of this requirement, issuing an order stating that “[n]o plan submitted by the General Assembly and approved by this Court, or in the absence of such a plan, no plan adopted by the Court, shall be administered in the 2002 elections until such time as it is precleared pursuant to Section 5 of the Voting Rights Act.” App. 13 to Response in Opposition 3. As there is no plan in North Carolina to hold elec *1305 tions in unprecleared districts, there are no grounds for granting a stay. The stay application is denied.

It is so ordered.