EDMUNDS, Justice.
Because these cases are procedurally entangled, our first task is to distinguish them. On 16 November 2001, the plaintiffs in Stephenson v. Bartlett (Stephenson) filed in Superior Court, Johnston County, their first amended complaint, alleging that the 2001 legislative redistricting plans for the North Carolina Senate and House (the 2001 plans), passed by the North Carolina General Assembly after the 2000 census in accordance with Article I, Section 2 of the United States Constitution and Article II, Sections 3 and 5 of the North Carolina Constitution, were flawed. The Stephenson plaintiffs' essential contention was that the 2001 plans violated the North Carolina Constitution by dividing counties into separate legislative districts for reasons other than compliance with federal voting law. On 16 November 2001, the Chief Justice of the Supreme Court of North Carolina designated the case asexceptional and assigned Johnston County Resident Superior Court Judge Knox V. Jenkins to preside. On 18 January 2002, the Superior Court, Johnston County, denied the Stephenson defendants' motion to change venue from Johnston County to Wake County. The Stephenson defendants did not appeal the denial.
On 20 February 2002, the Superior Court, Johnston County, found that the 2001 plans violated the North Carolina Constitution and allowed the Stephenson plaintiffs' motion for declaratory and injunctive relief. The court's order included a permanent injunction that prevented the Stephenson defendants from conducting future legislative elections under any redistricting plans that violate the North Carolina Constitution. On 7 March 2002, this Court issued an order enjoining legislative primary elections, and on 30 April 2002, affirmed the trial court's order declaring the 2001 plans unconstitutional and granting the Stephenson plaintiffs a permanent injunction. Stephenson v. Bartlett, 355 N.C. 354, 562 S.E.2d 377 (2002) (Stephenson I). In that opinion, this Court established specific criteria to be used by the superior court in evaluating the constitutionality of any new redistricting plans enacted by the General Assembly. We then remanded the case to the superior court with directions that any new redistricting plans, "including any proposed on remand in this case," comply with the criteria. Id. at 384, 562 S.E.2d at 397. The superior court was authorized to enter any further orders necessary to implement the holdings of this Court. The General Assembly thereafter enacted a second set of redistricting plans (the 2002 plans). After the Stephenson defendants filed these plans with the Superior Court, Johnston County for judicial review, the Stephenson plaintiffs challenged their constitutionality. On 31 May 2002, the superior court entered an order finding that the 2002 plans failed to comply with the requirements set out in Stephenson I. The superior court then adopted interim plans and ordered the State to conduct elections in accordance with those plans during the 2002 elections. The Stephenson defendants appealed, and on 16 July 2003, this Court affirmed the ruling of the trial court. Stephenson v. Bartlett, 357 N.C. 301, 582 S.E.2d 247 (2003) (Stephenson II).
The General Assembly enacted its most recent redistricting plans on 25 November 2003 (the 2003 plans). That same day, the General Assembly enacted 2003 N.C. Session Law 434 (the session law). Act of Nov. 25, 2003, ch. 434, 2003 N.C. Sess. Laws (1st Extra Sess. 2003). Sections 7 through 11 of the session law, which are the focus of this appeal, have been codified as sections 1-81.1, 1-267.1, 120-2.3, and 120-2.4. N.C.G.S. §§ 1-81.1, -267.1, 120-2.3, -2.4 (Special Supp. 2004). Section 1-81.1 provides that venue in any action involving redistricting lies exclusively with the Superior Court, Wake County. N.C.G.S. § 1-81.1. Section 1-267.1(a) provides for a three-judge panel to hear legal challenges to legislative redistricting plans. N.C.G.S. § 1-267.1(a). The panel, which is to be appointed by the Chief Justice, shall consist of oneresident superior court judge from the first through fourth judicial divisions (the eastern part of the state), one resident superior court judge from the fifth through eighth judicial divisions (the western part of the state), and, as the presiding judge, the senior resident superior court judge of Wake County. N.C.G.S. § 1-267.1(b). No judge who has been a member of the General Assembly may serve on the panel. Id. All redistricting actions must be heard and determined by the three-judge panel in Superior Court, Wake County. N.C.G.S. § 1-267.1. The session law directed that redistricting actions pending in a court other than Superior Court, Wake County, be transferred to that court. Ch. 434, sec. 11(b), 2003 N.C. Sess. Laws (1st Extra Sess. 2003). If a court finds a redistricting plan is flawed, the General Assembly has an opportunity to correct any defects before the court imposes a substitute plan. N.C.G.S. §§ 120-2.3, -2.4.
On 1 December 2003, the complaint in Morgan v. Stephenson (Morgan) was filed in Superior Court, Wake County. Morgan is a declaratory judgment action in which the plaintiffs seek a determination of the constitutionality of sections 7 through 11 of the session law. Some of the plaintiffs in Morgan are defendants in Stephenson, and all the defendants in Morgan are plaintiffs in Stephenson. Also on 1 December 2003, the Stephenson plaintiffs filed in Superior Court, Johnston County, their "Plaintiffs' Motion in the Cause for Declaratory and Injunctive Relief Concerning the Jurisdiction and Venue Stripping Provisions of the 2003 N.C. Extra Session Law, Chapter 434." This motion challenged the constitutionality of portions ofsections 7 through 11 of the session law and raised the same core issue that the Morgan plaintiffs raised in their declaratory judgment action. The following day, the Stephenson plaintiffs filed in Superior Court, Johnston County, their "Motion in the Cause to Enforce Judgments and Request for Briefing Schedule and Expedited Hearing." This motion argued that the 2003 plans were unconstitutional under the criteria set out in Stephenson I and that they failed to comply with Stephenson II.
On 4 December 2003, Judge Jenkins entered an order in Superior Court, Johnston County, staying proceedings in Stephenson pending resolution of Morgan. In that order, Judge Jenkins noted that Judge Donald W. Stephens, Senior Resident Superior Court Judge in Wake County, had requested that the Chief Justice designate Morgan as an exceptional case and appoint a judge to preside over all Wake County matters. On that same date, by letter to the Chief Justice, Judge Jenkins noted the practical difficulties in having these intertwined matters presided over by different judges in different counties. Because he believed that the Wake County matters took precedence, Judge Jenkins asked to be relieved. On 5 December 2003, the Chief Justice designated Morgan and redesignated Stephenson as exceptional, and then assigned Superior Court Judge Robert H. Hobgood to preside over both cases. On 12 December 2003, the defendants in Morgan moved to dismiss that case. Judge Hobgood denied this motion on 23 December 2003.
On 5 January 2004, Judge Hobgood entered a summary judgment order in Morgan in which he struck as faciallyunconstitutional those parts of the session law that (1) required that the Resident Wake County Superior Court Judge on the panel be the Senior Resident, and (2) required that the Chief Justice consult with the North Carolina Conference of Superior Court Judges and receive from that body a list of recommendations before making appointments to the three-judge panel. Finding that the session law had a severability provision, Judge Hobgood struck the offending portions and upheld the constitutionality of the remaining provisions of the session law. He also entered an order finding that the venue transfer provisions constitutionally applied to pending litigation and, therefore, transferred Stephenson from Johnston County to Wake County for resolution by the three-judge panel of any further questions in that case.
On 9 January 2004, the plaintiffs in Stephenson filed a notice of appeal from Judge Hobgood's order transferring venue. The defendants in Morgan also filed a notice of appeal from Judge Hobgood's summary judgment order and his order denying defendants' motion to dismiss. This Court, on 30 January 2004, issued an order consolidating the Morgan and the Stephenson actions for the purpose of reviewing the constitutionality of the session law.
We begin by determining the status of Stephenson. The Stephenson plaintiffs argue that they have a vested right to venue in Johnston County before a single judge and that by enacting the session law, the General Assembly retroactively stripped them of their right, contrary to our holding in Gardner v. Gardner, 300 N.C. 715, 268 S.E.2d 468 (1980). In Gardner, theplaintiff brought an action in District Court, Wayne County, seeking alimony without divorce. The defendant's initial efforts to have venue changed to Johnston County were unsuccessful. However, during the pendency of the action, the plaintiff moved to Georgia, and the General Assembly passed a bill to the effect that where one party in such an action has left the state, venue could be changed on motion of the other party. The defendant duly moved for a change of venue to Johnston County, and the motion was allowed. The Court of Appeals reversed the change of venue, and we affirmed, holding that a "statute may be applied retroactively only insofar as it does not impinge upon a right which is otherwise secured, established, and immune from further legal metamorphosis." Id. at 719, 268 S.E.2d at 471.
Thus, Gardner would apply to the case at bar if the Stephenson plaintiffs have a vested right to venue in Johnston County. However, such a right, even if established by circumstances, would exist only if Stephenson were an ongoing case. Our review of the record convinces us that Stephenson I and II together represent the final disposition of the case as it relates to the 2001 plans, the 2002 plans, and the 2002 general election. The issue sought to be litigated by plaintiffs when Stephenson was filed was the constitutionality of the General Assembly's 2001 redistricting plans. Modifying and affirming the trial court's order, this Court found in Stephenson I that the 2001 plans were not constitutional and set out specific requirements with which any subsequent redistricting plans must comply. When the trial court determined that the GeneralAssembly's 2002 plans failed to meet the requirements set out in Stephenson I and developed interim plans for use in the 2002 legislative elections only, the Stephenson defendants filed a notice of appeal. This Court reviewed the complete record and concluded that the evidence supported the trial court's findings of fact and conclusions of law that the 2002 plans failed to comply with the standards set out in Stephenson I and were constitutionally deficient. Stephenson II, 357 N.C. 301, 582 S.E.2d 247.
This sequence demonstrates that while Stephenson ostensibly was brought to challenge a specific redistricting, our holding in Stephenson I set out for the General Assembly and for any reviewing trial court the requirements that any redistricting plans must meet to pass constitutional muster. Every action that has occurred subsequent to the issuance of our opinion in Stephenson I has been directed toward implementing the holding in that case, and none has been aimed at having this Court amend or overrule that holding. In other words, as a result of our opinions in Stephenson I and II, there is no longer any case and controversy before this Court relating to the constitutional requirements for a North Carolina legislative redistricting plan. Final orders have been issued as to the 2001 plans and the 2002 plans, and the 2002 elections have been held. The case is over.
Because Stephenson is complete, Gardner does not apply and the Stephenson plaintiffs do not have an ongoing vested right to venue in Johnston County. We are nevertheless aware that legislative redistricting based upon the 2000 decennial censusremains an unresolved matter. By letter dated 30 March 2004, the United States Department of Justice has advised the North Carolina Attorney General that it does not interpose any objections to the 2003 plans. Thus, if the Stephenson plaintiffs seek to challenge the constitutionality of those plans in terms of our holding in Stephenson I, they must file a motion in the cause in Morgan or file a complaint in Superior Court, Wake County, pursuant to N.C.G.S. § 1-81.1. Counsel for the Morgan plaintiffs acknowledged the possibility of a new suit in the following exchange at the hearing before Judge Hobgood as to the constitutionality of the session law:
[COUNSEL]: Your Honor, so as I understand it, any challenge to the 2003 redistricting must be filed as a new claim in the 03 case, and the issue there would be whether that redistricting was consistent with the Stephenson line of cases out of Johnston County.
THE COURT: Yes, sir.
For these reasons, the Stephenson plaintiffs' challenge to the 2003 redistricting plans was improvidently filed under the Stephenson caption.
The trial court also properly denied the Morgan defendants' motion to dismiss the declaratory judgment action. The Morgan defendants argue that the Morgan plaintiffs do not have standing to bring such a suit. However, "[s]tanding to challenge the constitutionality of a legislative enactment exists where the litigant has suffered, or is likely to suffer, a direct injury as a result of the law's enforcement." Maines v. City of Greensboro, 300 N.C. 126, 130-31, 265 S.E.2d 155, 158 (1980). The Morgan plaintiffs include legislative leaders in the North Carolina General Assembly who, as indicated by Stephenson, may expect to be sued in their official capacities in any further redistricting litigation. Therefore, the Morgan plaintiffs meet the Maines standard.
In addition, the Morgan defendants argue that, pursuant to State ex rel. Edmisten v. Tucker, 312 N.C. 326, 348, 323 S.E.2d 294, 308-09 (1984), the trial court should not entertain a declaratory judgment action while there is another pending action involving the same issues and parties. However, in light of our holding that Stephenson has reached a final disposition, no contemporaneous case exists to conflict with Morgan. Moreover, the Morgan parties have an ongoing interest in the constitutionality of the statutes governing challenges to redistricting plans. We have recognized that "a petition for declaratory judgment is a particularly appropriate means for determining the constitutionality of a statute when the parties' desire and the public need requires a speedy determination of the important public interests involved." Id. Accordingly, we hold that the trial court properly denied the Morgan defendants' motion to dismiss the declaratory judgment action.
We now turn to the constitutionality of the session law as codified. First, the Morgan defendants argue that N.C.G.S. § 1-267.1 unconstitutionally creates a new court. They contend that the only courts permitted by the North Carolina Constitution are the district courts, the superior courts, the court of appeals, and the Supreme Court. N.C. Const. art. IV, §§ 1, 2. However, we do not believe that the procedure established by the General Assembly for challenging redistricting plans creates a new court outside this constitutional framework. Section 1-267.1(a) specifically requires that any challenges to redistricting "shall be filed in the Superior Court of Wake County and shall be heard and determined by a three-judge panel of the Superior Court of Wake County." N.C.G.S. § 1-267.1(a). This language places redistricting challenges in the superior court, the court recognized by the North Carolina Constitution as having original general jurisdiction throughout the state. N.C. Const. art. IV, § 12.
Nor do we find that a new court is created by the statutory requirement that the proceedings be held before a three-judge panel. See N.C.G.S. § 1-267.1. The mandate that three superior court judges participate in cases challenging redistricting is, we believe, a matter of procedure that lies within the purview of the General Assembly. N.C. Const. art. IV, § 13(2). The General Assembly has exercised its prerogative to establish similar procedures in other types of cases. For instance, three-judge panels are statutorily authorized to review applications of electronic surveillance orders, N.C.G.S. §§ 15A-286(16), -291 (2003), and to review applications for the convening of an investigative grand jury, N.C.G.S. § 15A-622(h) (2003). Accordingly, we hold that the three-judge panel of superior court judges required by N.C.G.S. § 1-267.1 is not a new court outside the contemplation of the North Carolina Constitution. The Morgan defendants next argue that N.C.G.S. § 1-81.1 unconstitutionally restricts to Wake County the jurisdiction of the three-judge panel of the superior court hearing redistricting cases. However, our reading of the statute satisfies us that this provision does not affect jurisdiction. Instead, the General Assembly has done no more than establish venue for lawsuits that challenge redistricting. Venue is a procedural matter, see Crain & Denbo, Inc. v. Harris & Harris Constr. Co., 250 N.C. 106, 109, 108 S.E.2d 122, 125 (1959), and, as noted above, the General Assembly has the constitutional authority to establish rules of procedure for the Superior Court Division. N.C. Const. art. IV, § 13(2). Pursuant to this authority, the General Assembly has, by statute, defined venue for every type of case. See N.C.G.S. §§ 1-76 to -82 (2003). In addition, once an action is filed, venue is sufficiently flexible that it may be changed "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." N.C.G.S. § 1-83(2) (2003). In light of the policies implied in these statutory provisions, we perceive no constitutional bar to the General Assembly's setting venue for redistricting challenges in the county where the capital of North Carolina is located.
The Morgan defendants' next contention is that the provisions in N.C.G.S. § 1-267.1(b) requiring that the judges on the three-judge panel come from particular parts of the State infringe on the power of the Chief Justice to assign judges. Article IV, Section 11 of the North Carolina Constitution sets out powers and responsibilities of the Chief Justice, includingthe power to assign superior court judges. N.C. Const. art. IV, § 11. Section 1-267.1(b), as modified by the trial court, requires that the Chief Justice appoint to the three-judge panel a resident superior court judge from Wake County and "one resident superior court judge from the First through Fourth Judicial Divisions and one resident superior court judge from the Fifth through Eighth Judicial Divisions." N.C.G.S. § 1-267.1(b). In addition, the statute states that "no member of the panel . . . may be a former member of the General Assembly." Id.
The statute assures that the judges assigned by the Chief Justice to the three-judge panel will come from different parts of the State. Despite the Morgan defendants' claim, the geographical designation contained in N.C.G.S. § 1-267.1 cannot be said to be an impermissible encroachment on the Chief Justice's authority because the Chief Justice has the unfettered power to select two of the panel members from dozens of qualified judges. Moreover, the requirement that one of the resident superior court judges from Wake County be on the panel is logical for several reasons. A Wake County judge would be best suited to coordinate with the other judges on the panel and deal with routine matters filed with the Wake County Clerk of Superior Court that do not demand the physical presence of all three panel judges. Moreover, Raleigh is the state capital, and the General Assembly has consistently shown a preference for having certain civil and administrative actions conducted there. See, e.g., N.C.G.S. § 1-77 (2003) (actions against a public officer for an act done by him by virtue of his office should be tried in thecounty where the cause arose); N.C.G.S. § 87-4 (2003) (first meeting of State Licensing Board for General Contractors to be held in Raleigh); N.C.G.S. § 87-18 (2003) (first meeting of State Board of Examiners of Plumbing, Heating and Fire Sprinkler Contractors to be held in Raleigh); N.C.G.S. § 90-270.9 (2003) (North Carolina Psychology Board to meet annually in Raleigh); N.C.G.S. § 90A-57 (2003) (State Board of Sanitarian Examiners to meet annually in Raleigh); N.C.G.S. § 106-4 (2003) (Board of Agriculture to meet at least twice a year in Raleigh). The requirement that a former member of the General Assembly may not sit as a member of the three-judge panel is sensible insurance against any appearance of conflict of interest. Although this Court will zealously protect its prerogatives and exercise its duties under the Constitution, we hold that the provisions of N.C.G.S. § 1-267.1 within this specific context do not impermissibly infringe on the Chief Justice's authority to assign judges.
The Morgan defendants argue that N.C.G.S. §§ 120-2.3 and 120-2.4 impermissibly limit the authority of the judicial branch to fashion appropriate relief for constitutional violations. Section 120-2.3 requires that any judicial order invalidating a redistricting act shall specify every defect found by the court. N.C.G.S. § 120-2.3. Section 120-2.4 states:
If the General Assembly enacts a plan apportioning or redistricting State legislative or congressional districts, in no event may a court impose its own substitute plan unless the court first gives the General Assembly a period of time to remedy any defects identified by the court in its findings of fact and conclusions of law. That period of time shall not be less than two weeks. In the event the General Assembly does not act to remedy any identified defects to its plan within that period of time, the court may impose an interim districting plan for use in the next general election only, but that interim districting plan may differ from the districting plan enacted by the General Assembly only to the extent necessary to remedy any defects identified by the court.
N.C.G.S. § 120-2.4. We do not believe that these provisions are an unconstitutional usurpation of authority reserved to the courts. First, N.C.G.S. § 120-2.4 is consistent with the remedy fashioned by this Court in Stephenson I, where, after determining that the existing plans were unconstitutional, we acknowledged that the General Assembly should be given the initial opportunity to draw new plans. See Stephenson I, 355 N.C. at 385, 562 S.E.2d at 398 ("The General Assembly optimally should be afforded the first opportunity to enact new redistricting plans for the North Carolina Senate and North Carolina House of Representatives based on the 2000 census and the constitutional requirements which we have upheld in this opinion."). Second, and more generally, because redistricting is a legislative responsibility, N.C.G.S. §§ 120-2.3 and 120-2.4 give the General Assembly a first, limited opportunity to correct plans that the courts have determined are flawed. Not only do these statutes allow the General Assembly to exercise its proper responsibilities, they decrease the risk that the courts will encroach upon the responsibilities of the legislative branch. N.C. Const. art. I, § 6 ("The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other."). Accordingly, we hold that N.C.G.S. §§ 120-2.3 and 120-2.4 are not unconstitutional limitations on the judicial branch.
Redistricting cases are inordinately complex, politically volatile, and relatively rare. Our review of the constitutionality of the session law as codified in N.C.G.S. §§ 1-81.1, 1-267.1, 120-2.3, and 120-2.4 has been informed by the delicacy of the balance of powers set out in our Constitution. In the context of redistricting, the potential for the branches of government to collide with each other is great, and the consequences of such a collision are grave. In passing these statutes, the General Assembly has recognized the unique nature of these infrequent but potentially divisive cases and has set out a workable framework for judicial review that reduces the appearance of improprieties.
The order of the trial court in Morgan, finding the session law constitutional as modified, is affirmed.
AFFIRMED.
Justices ORR and MARTIN did not participate in the consideration or decision of this case.